IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CONSTANCE SUE ALBRECHT,

    Plaintiff,

vs.                                            NO. CIV 11-407 CG

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court upon Plaintiff's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum*, (Doc. 23), Defendant's *Response to Plaintiff's Motion to Reverse and Remand*, (Doc. 24), and Plaintiff's *Reply to the Commissioner's Response to Plaintiff's Motion to Reverse and Remand*, (Doc. 25).

This is a "closed period case" - one in which the Administrative Law Judge ("ALJ") determined that Plaintiff was disabled for a finite period of time and thereafter regained the ability to work. Plaintiff believes the ALJ erred in finding that Plaintiff was no longer disabled because she had engaged in substantial gainful activity and her medical condition improved. (Doc. 23 at 8-19). The Commissioner maintains that Plaintiff's work and medical history substantially support the ALJ's findings with regard to Plaintiff's medical improvement and her demonstrated ability to perform substantial gainful activity. (Doc. 24 at 3-11).

Having considered the parties' filings, the relevant law, and having meticulously reviewed and considered the entire administrative record ("AR"), the Court finds that Plaintiff's *Motion to Reverse and Remand* is well-taken and should be **GRANTED**. The

Court will **REMAND** the case to the Commissioner for further proceedings consistent with the Memorandum Opinion and Order.

## II.     Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the

evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## III. Applicable Law and Sequential Evaluation Process

If a claimant is found to be disabled and entitled to disability insurance benefits, the Commissioner is required to review the case periodically to determine whether there has been any medical improvement in the claimant's condition and whether that improvement affects the claimant's ability to work. 20 C.F.R. § 404.1594(a). An eight-part sequential evaluation process is used in termination reviews. 20 C.F.R. § 404.1594(f)(1)-(8). The evaluation includes the following:

1) Is the claimant engaged in substantial gainful activity?

2) If not, does the claimant have an impairment or combination of impairments which meets or equals the severity of a listed impairment?

3) Has there been medical improvement?[1]

4) If there has been medical improvement, does the improvement relate to the claimant's ability to do work - i.e. has there been an increase in the claimant's residual functional capacity ("RFC") based on the impairment(s) present at the date of the most recent favorable medical determination.

5) If there has been no medical improvement, or if such improvement is not related

---

[1] Medical improvement under the regulation is defined as: "Any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with your impairment(s)." 20 C.F.R. § 1594(b)(1).

to claimant's ability to work, do any of the exceptions to medical improvement apply? (*See* 20 C.F.R. 404.1594(d)-(e) for a list of the applicable exceptions).

6) If there is medical improvement related to the claimant's ability to work, are the claimant's current impairments severe when considered in combination?

7) If the claimant's impairments are severe, does the claimant retain the ability to perform his or her past relevant work?

8) If the claimant's impairments are severe and the claimant cannot perform his or her past relevant work, does the claimant nevertheless possess the residual functional capacity to perform other work?

20 C.F.R. § 404.1594(f)(1)-(8). The Commissioner bears the burden of showing medical improvement by establishing that the claimant's medical condition has improved and that the improvement is related to Plaintiff's ability to work. *Glenn v. Shalala*, 21 F.3d 983, 987 (10th Cir. 1994).

## IV.  Background

Plaintiff, a 57 year old woman with a long history of physical and mental impairments, filed for disability insurance benefits in February of 2006. (Doc. 23 at 1). Plaintiff spent much of her adult life in Oregon and the majority of her medical treatment was provided there. After applying for benefits in Oregon in 2006, Plaintiff moved to Deming, New Mexico while her case was still active. (*See, e.g.,* AR at 101). The administrative hearings and all subsequent proceedings were held in New Mexico. (*Id.* at 42, 65).

To say that Plaintiff's medical history is extensive would be an understatement. As noted on a single psychiatric assessment form at the Deschutes County Mental Health

clinic in Oregon, Plaintiff has suffered from, *inter alia*, severe asthma, hyperthyroidism, severe arthritis, fybromyalgia, severe allergies, chronic cervical and lumbar spinal impairments, and crippling depression. (*Id.* at 748). She reported to Bend Medical Center in February of 2006 that she was taking at least fifteen different prescription medications on a regular basis, and her medical records indicate that she has taken many more in an effort to treat her various ailments. (*See, e.g., Id.* at 818, 1070). Thankfully, not all of Plaintiff's impairments are relevant to the ALJ's decisions and the resolution of this case depends more on questions of law than an in-depth weighing of the severity of Plaintiff's various impairments. Therefore, the Court will discuss Plaintiff's medical impairments only inasmuch as necessary to provide a general background of her medical history and as they relate to the ALJ's decision denying benefits.

    a.    **Physical Impairments**

Plaintiff has a long history of both cervical and lumbar spinal problems. (*See, e.g.*, AR at 7-9). Plaintiff suffered two serious car accidents in the early 2000's and, as a result, began to experience spinal problems which led to considerable pain in her neck, shoulders and arms. (*Id.* at 7, 34). In August of 2003, she elected to undergo a cervical diskectomy and fusion at the C5-6 and C6-7 vertebrae at the Orthopedic and Neurological Center of the Cascades in Oregon. (*Id.* at 686-91). Plaintiff reported significant improvement with regard to her spinal pain but, within eight months of the surgery she began to complain of increased neck pain. (*Id.* at 699-700, 702-706). Medical records indicate that her complaints of chronic back pain continue to the present. (*Id.* at 7, 774, 780, 786, 1188-89).

Plaintiff has also suffered from fibromyalgia for several years.[2] The diagnosis was made after Plaintiff complained of serious pain and "feeling terrible" despite the fact that blood tests and other diagnostic tests showed no abnormality. (*Id.* at 774). Because fibromyalgia is not usually accompanied by any objective or visible signs and most sufferers show relatively normal blood tests and x-rays, Plaintiff's doctors classified her unexplained symptoms as "fibromyalgia pains." (*Id.*). Plaintiff's medical records reflect recurring complaints of chronic fatigue and pain which are frequently classified as fibromyalgia pains. (*See, e.g.*, *Id.* at 744, 748, 786, 819, 821). In addition to fibromyalgia, the medical records also indicate that Plaintiff suffers from osteoarthritis. (*Id.* at 820, 827). Neither Plaintiff nor her doctors have been able to consistently tell whether her chronic pain is due to the fibromyalgia or the osteoarthritis. (*Id.* at 57, 834).

Plaintiff has also suffered from severe asthma for her whole life. (*Id.* at 57). She has used a variety of prescription medications and inhalers to help control the condition with varying degrees of success. Her records reflect multiple severe attacks and repeated medical visits to help control the condition. (*See, e.g., Id.* at 840, 842, 844-45, 877, 994).

b. **Mental Impairments**

Plaintiff has suffered from a major depressive disorder from much of her life as a result of childhood trauma and abuse. (*Id.* at 748). Plaintiff was first diagnosed with major depression in her early twenties and she has been taking prescription antidepressants since then. (*Id.* at 963). Plaintiff's depression has been exacerbated in recent years by a

---

[2] Fibromyalgia is a "common syndrome in which a person has long-term, body-wide pain and tenderness in the joints, muscles, tendons, and other soft tissues. Fibromyalgia has also been linked to fatigue, sleep problems, headaches, depression, and anxiety." *See* U.S. National Library of Medicine, *available at* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001463

variety of factors, including her chronic pain and physical ailments, as well as economic and social concerns. (*Id.* at 923 (stating that combination of fibromyalgia and pain have exacerbated Plaintiff's depression and decreased her coping mechanisms); *Id.* at 963 (noting that poor physical health, chronic pain, economic concerns and fatigue are exacerbating her depression)).

While Plaintiff was described by one of her therapists as having better coping skills than most, she has experienced significant depressive episodes, some of which have lasted for several months. (*See, e.g., Id.* at 32 (ALJ noted that Plaintiff's medical records indicate depressive episodes in 2003, 2004, and 2005)). Plaintiff's most severe episode of decompensation occurred in 2006. At that time Plaintiff was being treated primarily by a social worker named Catherine Zimmerman in Oregon and Ms. Zimmerman reported that Plaintiff was seeking treatment 2-4 times per month. (*Id.* at 962). Ms. Zimmerman described Plaintiff as having

> [A] Severely depressed mood, feelings of overwhelming sadness, anhedonia, persistent disturbance of mood, appetite disturbance, decreased energy, difficulty thinking or concentrating, disorientation to time/place, memory impairment, thoughts of suicide . . . feelings of guilt and low self worth, emotional withdrawal and social isolation . . . feelings of restlessness, irrational feelings of fear and panic . . . re-experiencing of [ ] traumatic event[s], intense and increased arousal, vigilance and scanning, and avoidance.

(*Id.* at 963-64). She assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 31.[3]

Ms. Zimmerman found Plaintiff to be socially isolated and she demonstrated

---

[3] The GAF scale is used by doctors and considers a patient's psychological, social, and occupational functioning. A GAF score between 31-40 is considered very low and indicates major impairment in several areas, including family relations, judgment, thinking, or mood. *See* Diagnostic & Statistical Manual of Mental Disorders at 384 (4th ed. American Psychiatric Society, 2000).

increased difficulty in maintaining social relationships. (*Id.* at 960). Plaintiff tended to view others as "untrustworthy and unreliable" and that this negatively affected Plaintiff's ability to maintain stable employment. (*Id.* at 960, 962, 966). Plaintiff sought crisis intervention care at Washington County Mental Health due to active suicidal ideation in June of 2006. (*Id.* at 960).

Following her move to New Mexico, Plaintiff continued to receive mental health treatment at the Ben Archer Health Center in Deming. She was treated by a psychiatrist named Dr. Nguyen and a social worker named Nany Claypool. Ms. Claypool's first assessment of Plaintiff in February of 2007 noted severe depression resulting from a history of child abuse and exacerbated by chronic health complications and a lack of stability. (*Id.* at 1098). She estimated Plaintiff's GAF to be 41-50, which typically indicates serious impairments in social and occupational functioning. (*Id.*; Diagnostic & Statistical Manual of Mental Disorders at 384 (4th ed. American Psychiatric Society, 2000)). Plaintiff's treatment with Claypool and Nguyen appears to have improved her symptoms and in both November of 2007 and March of 2008 Ms. Claypool estimated Plaintiff's GAF to be between 85-95, which indicates no or minimal symptoms and good functioning in all areas. (*Id.* at 1075, 1079).

Ms. Claypool referred Plaintiff to a social worker in Silver City named Anne Veenstra for counseling in 2007. (*Id.* at 1079). Ms. Veenstra treated Plaintiff between July 2007 and February 2008, and her impression of Plaintiff's mental health was far more grim. Veenstra found that Plaintiff continued to exhibit symptoms of anxiety, depression, sleep disturbance, hypervigilance, flashbacks, difficulty concentrating, and avoidance. (*Id.* at 1065). She found that these symptoms persisted in spite of therapy and medication. (*Id.*). Veenstra opined

that Plaintiff was unable to work as a result of her mental and physical impairments. (*Id.* at 1066).

      c.    **<u>Administrative Hearings</u>**

Plaintiff testified at two hearings before ALJ Joanne Birge in support of her claim of disability. (*Id.* at 42, 65). Plaintiff was unrepresented at both hearings and, while the ALJ encouraged her to retain counsel due to the complexity of her case, Plaintiff elected to proceed without an attorney. (*Id.* at 65-67, 90-91). The first hearing focused on Plaintiff's earnings in recent years. The ALJ expressed her belief that Plaintiff's earnings in 2007 - approximately $13,830 - constituted substantial gainful activity and precluded a finding of disability after 2007. (*Id.* at 75-77). The ALJ also asked some preliminary questions regarding Plaintiff's continued homelessness as well as her recent work history. (*Id.* at 79-85). The ALJ did not ask more than preliminary questions about Plaintiff's medical impairments because Plaintiff has not yet provided all of her medical and vocational records to the agency at the time of the hearing. The ALJ provided Plaintiff with thirty days to supplement the record and scheduled a second hearing. (*Id.* at 89-90).

Plaintiff supplemented the record prior to the second hearing but was unable to secure all of the relevant vocational and psychiatric records. (*Id.* at 43-44, 52). Nevertheless, the ALJ stated that she was under pressure from both Congress and the Social Security main office to clear up old cases so she elected to proceed with Plaintiff's hearing. (*Id.* at 44). The ALJ again reviewed Plaintiff's work history and earnings up through 2007. (*Id.* at 45-49). Plaintiff testified that she was disabled between 2002 and 2007 and, while she worked sporadically during those years, her impairments prevented her from maintaining any gainful employment. (*Id.*). Plaintiff did secure a grant-writing contract from

the city of Deming in 2007 and she worked for approximately ten or eleven months in that year, earning $13,830. (*Id.* at 49).

The ALJ then went over Plaintiff's relevant impairments, which she described as "major depression, PTSD, fibromyalgia, asthma, and . . . osteoarthritis." (*Id.* at 50). Plaintiff testified that she continued to seek therapy for her depression and that Dr. Nguyen had prescribed Prozac, Klonopin, Lyrica, and Cymbalta to aid with her depression and fibromyalgia. (*Id.* at 55). She claimed that her fibromyalgia pains were worsening and that pain in her neck and arms resulting from the car accidents and subsequent surgery was also worsening. (*Id.* at 57).

After approximately thirty minutes, the ALJ informed Plaintiff that the hearing was taking too long and that she had to proceed to the next claimant. (*Id.* at 59-60). The ALJ reiterated that she wanted to dispense with Plaintiff's case as soon as possible. (*Id.* at 59-61). The ALJ did not make use of a Vocational Expert at the hearing and did not request a consultative examination of Plaintiff prior to issuing her decision.

### d.    ALJ's Decision

The ALJ issued her decision on February 2, 2009. (*Id.* at 23). The ALJ found that Plaintiff became disabled on August 13, 2003, but that her disability ended on January 1, 2007. (*Id.* at 32-36). The ALJ found that Plaintiff's disability was caused, in whole or in part, by her cervical degenerative disc disease, fibromyalgia, carpal tunnel disorder, and major depressive disorder. (*Id.* 30-36). The ALJ found that Plaintiff's asthma, among other physical and mental impairments, was not particularly severe and did not impair her ability

to perform basic work functions. (*Id.* at 30).[4]

The ALJ's discussion of Plaintiff's physical impairments - most notably her degenerative disc disease and fibromyalgia - are somewhat equivocal. On the one hand, she found the cervical issues to be severe but also took pains to describe how medical records following the diskectomy and fusion surgery tended to show significant improvement in muscle strength and pain management. (*Id.* at 34). She accepted the diagnosis of fibromyalgia but noted that all laboratory and diagnostic tests produced normal results and tended to contradict Plaintiff's complaints of chronic pain. (*Id.* at 34-35).

The ALJ findings with regard to Plaintiff's mental health are similarly mixed. The ALJ found that Plaintiff suffered from a major depressive disorder between 2002 and 2006 but that, in general, Plaintiff responded well to treatment and medication and that her depression did not limit her daily activities and functioning to more than a moderate degree. (*Id.* at 32-33). Nevertheless, the ALJ gave credence to the opinions of Catherine Zimmerman, MSW, and Dr. Sheryl Norris, who found that Plaintiff's depression was severe in 2006. (*Id.* at 33). She accepted their assessment of Plaintiff's GAF reaching a low of 31 in 2006 and found that Plaintiff was mentally incapable of adapting to normal changes in the workplace, responding appropriately to supervisors and coworkers, or sustaining the pace needed to maintain employment. (*Id.* at 34).

---

[4] The other impairments rejected by the ALJ included hearing loss, irritable bowel syndrome, gastroesophageal reflux disease, and restless leg syndrome. (AR at 31). She found that, while the carpal tunnel disorder constituted a severe impairment, surgery fully resolved the disorder in 2004 and that it no longer contributed to Plaintiff's disability. She further rejected PTSD as a severe impairment, finding that the diagnosis was not supported by the record. (*Id.*). The ALJ found there was little evidence or treatment notes which would support a diagnosis of PTSD as distinguished from Plaintiff's major depressive disorder. (*Id.*).

The ALJ's determination that Plaintiff's disability ended on January 1, 2007, was based on two separate findings: 1) that Plaintiff engaged in substantial gainful activity in 2007, and 2) medical improvement relating to Plaintiff's ability to work. (*Id.* at 36-38). The ALJ found medical improvement with regard to both the physical and mental impairments. (*Id.* at 36). Although the ALJ acknowledged that Plaintiff continued to complain of persistent back pain, she noted that testing showed no radiculopathy. (*Id.* 36). She also pointed to the absence of medical records indicating that Plaintiff's back pain prevented her from being able to sit, stand, walk, stoop, kneel, climb, crouch, or crawl. (*Id.*). The ALJ discounted Plaintiff's fibromyalgia complaints, noting that laboratory and diagnostic tests in 2007 and 2008 were normal and "included[d] no signs or symptoms of fibromyalgia." (*Id.*).

With regard to Plaintiff's mental health, the ALJ found that her depression had improved such that it could no longer be considered severe in 2007. (*Id.* at 37). In support, the ALJ relied on notations by Dr. Nguyen at the Ben Archer Health Center describing Plaintiff as "socially appropriate" and noting that, despite the presence of psychological stressors, Plaintiff "does not have a major depressive episode [at] the present time." (*Id.* at 37 (citing *Id.* at 1071). The ALJ also relied on the fact that Ms. Claypool scored Plaintiff's GAF in the 85-95 range. (*Id.* at 37). The ALJ ultimately concluded that Plaintiff was capable of performing her past relevant work as a consultant, grant-writer, and program coordinator. (*Id.* at 38).

## V.   Analysis

Plaintiff contends that the ALJ erred in finding that she had engaged in substantial gainful activity in 2007. (Doc. 23 at 3-5). She also submits that the ALJ's findings regarding medical improvement are contrary to law and not supported by substantial evidence. (*Id.*

at 7-19). The Court will address both arguments in turn.

### a. **The ALJ Erred in Finding That Plaintiff Engaged in Substantial Gainful Activity.**

The first step in termination reviews is to determine whether the claimant has engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1594(f)(1). If the claimant has engaged in SGA, the claimant's disability has ended. *Id.* SGA is defined in the regulations as "work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done ... for pay or profit." 20 C.F.R. §§ 404.1510; 416.910. The regulations provide income guidelines to assist in determining whether the relevant work constitutes SGA. 20 C.F.R. § 404.1574. SGA for a non-blind claimant in 2007 was set at $900 pers month. *See* http://www.ssa.gov/oact/cola.sga.html. The regulations permit an claimant to subtract the value of certain expenses when calculating monthly earnings. These include impairment-related work expenses, ("IRWE's"), as well as normal business expenses for self-employed claimants. 20 C.F.R. §§ 404.1575; 404.1576. IRWE's include payments for medical devices as well as drugs, medical services, and doctor visits. 20 C.F.R. § 404.1576(c).

Plaintiff does not dispute that she made $13,830 while working for the City of Deming in 2007. However, she claims that the ALJ failed to develop the record with regard to Plaintiff's IRWE's and normal business expenses during 2007. (Doc. 23 at 3-5). Plaintiff testified at her first hearing that her medical costs in 2007 were very high and that she had to pay approximately $3,000 out of pocket for medical care. (AR at 88). Plaintiff argues that this testimony triggered the ALJ's duty to develop the record with regard to Plaintiff's IRWE's and business expenses. She contends that, had the ALJ investigated the extent

13

of Plaintiff's IRWE's and business expenses and deducted those from her gross earnings, the ALJ would have found that the 2007 earnings fell below SGA levels. (Doc. 23 at 3-5).

Defendant first objects to this argument on the grounds that Plaintiff's counsel never brought the issue of IRWE's before the Appeals Council. (Doc. 24 at 4). Defendant argues this Court should not entertain Plaintff's argument at this late stage in the administrative appeals process. (*Id.* at 4-5 (citing *Milano v. Bowen*, 809 F.3d 763, 767 (11th Cir. 1987); *Birchfield v. Harris*, 506 F.Supp. 251, 252 (E.D. Tenn. 1980)). The court disagrees. The Supreme Court has already rejected the notion that arguments not brought before the Appeals Council are forfeited at a later stage of review. *See Sims v. Apfel*, 530 U.S. 103, 112 (2000) ("Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues."). No statute mandates issue exhaustion before the Appeals Council and the Supreme Court has held that the non-adversarial nature of Social Security proceedings caution against a judicially-created exhaustion rule. *Id.* at 108-112 (noting that Social Security proceedings are not adversarial and that, because it was the administration's duty to investigate and consider all facts both for and against the granting of benefits, the Appeals Council "does not depend much, if at all, on claimants to identify issues for review."). Plaintiff's argument with regard to IRWE's and business expenses is properly before this Court.

The Court concurs that Plaintiff's testimony at the hearings triggered the ALJ's duty to develop the record with regard to Plaintiff's IRWE's and business expenses. In every Social Security case, the ALJ has a basic obligation to ensure that an adequate record is developed during the disability hearing consistent with the issues raised. *See Musgrave v.*

14

*Sullivan*, 966 F.3d 1371, 1374 (10th Cir. 1992); Soc. Sec. R. 96-8p, 1996 WL 374184, at *5. While this is true in all cases, the duty is heightened with the claimant in unrepresented. *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993). The ALJ must inquire into the facts of Plaintiff's case such that the ALJ is informed about "facts relevant to his decision and [learns] the claimant's own version of those facts." *Dixon v. Heckler*, 811 F.2d 506, 510, (10th Cir. 1987) (quoting *Heckler v. Campbell*, 461 U.S. 458, 471 n.1 (1983) (Brennan, J., concurring)); Soc. Sec. R. 96-7p at n. 3.

In this case Plaintiff raised the issue of steep medical expenses which substantially cut into her earnings in 2007. (AR at 85, 88). Plaintiff stated that she worked either ten or eleven months in 2007 and she estimated that her medical expenses for that year were approximately $3,000. (*Id.* at 49, 88). The deduction of $3,000 from Plaintiff's 2007 earnings would have brought her close to the $900 per month SGA cutoff. Plaintiff also advised the ALJ that she was self-employed in 2007, raising the prospect that she might have incurred self-employment business expenses which could be deducted from her gross earnings. (*Id.* at 76, 81-82).

Rather than develop the record with regard to Plaintiff's IRWE's and self-employment expenses, the ALJ repeatedly stated that the 2007 earnings were fatal to Plaintiff's application. (*Id.* at 49, 60 75, 86-87, 89, 91). The ALJ never asked Plaintiff any follow up questions about the $3,000 and she did not seek to determine whether any or all of that money would qualify as IRWE's. She did not request any additional documentation regarding Plaintiff's medical expenditures in 2007. Similarly, the ALJ made no mention of self-employment business expenses except to admonish Plaintiff during the first hearing that "[i]f you're going to claim that [the 2007 earnings] wasn't $1,000 a month, you need to

know by self-employment what you can count off and what you can't." (*Id.* at 77). The ALJ did not ask Plaintiff whether her work for the City of Deming gave rise to any business expenses such as copying or computer expenses. The ALJ made no mention of IRWE's or self-employment business expenses in her decision.

Defendant argues that any failure to develop the record is harmless because Plaintiff's $3,000 did not constitute IRWE's and there was no evidence in the record of self-employment business expenses. (Doc. 24 at 5-6). Defendant further argues that Plaintiff had unreported income in 2007 and that her gross income was substantially higher than $13,830. (*Id.*). These arguments fail because they constitute post-hoc rationalizations of the ALJ's legal error. Courts "may not create or adopt post-hoc rationalizations to support the ALJ"s decisions that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 842 F.3d 1205, 1207 (10th Cir. 2007); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

Upon remand, the ALJ should develop the record with regard to Plaintiff's IRWE's and self-employment business expenses. This will enable to administration to properly determine whether Plaintiff's earnings in 2007 constitute substantial gainful activity.

  **b.**   <u>**The ALJ Failed to Demonstrate Medical Improvement**</u>

Plaintiff argues that the ALJ failed to demonstrate medical improvement with regard to her mental health such that her depression was no longer a severe impairment in 2007. (Doc. 23 at 12-19). In closed period cases, it is the Commissioner's burden to demonstrate that Plaintiff's medical condition improved and that the improvement was related to her ability to work. *Glenn v. Shalala*, 21 F.3d 983, 987 (10th Cir. 1994). The Commissioner also carries the burden to demonstrate that Plaintiff is capable of performing her past relevant

work. *Hayden v. Barnhart*, 374 F.3d 986, 990-91 (10th Cir. 2004).

Plaintiff argues that the ALJ's finding with regard to her mental health improvement is not supported by substantial evidence. She believes that the ALJ improperly relied on evidence which tended to show improvement in depression symptoms while ignoring evidence which showed that Plaintiff's depression continued to impair Plaintiff's ability to work in 2007. (*Id.*). The Court concurs.

It appears that the ALJ selectively highlighted medical records and notations which showed positive improvement in Plaintiff's depression symptoms, while ignoring evidence of Plaintiff's continued struggles with depression. For example, the ALJ highlighted the fact that Nancy Claypool at the Ben Archer Health Center scored Plaintiff's GAF in the 85-95 range in November of 2007 and March of 2008. (AR at 37). A GAF of 85 and over indicates minimal symptoms and good functioning in all areas. (*Id.*). However, the ALJ ignored the fact that Nancy Claypool assessed Plaintiff's GAF at 41-50 in February of 2007. (*Id.* at 1098). A GAF of 41-50 typically indicates serious impairments in social and occupational functioning. (Diagnostic & Statistical Manual of Mental Disorders at 384 (4th ed. American Psychiatric Society, 2000). This assessment contradicts the ALJ's finding that Plaintiff's depression did not impair her ability to work in 2007. This error requires a remand since an ALJ may not pick and choose evidence when assessing a Plaintiff's case. *Carpenter v. Astrue*, 55 F.3d 530, 532 (10th Cir. 1995) (holding that "an ALJ may not pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.") (citations omitted); *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.") (citation omitted).

The ALJ also ignored the opinion of Anne Veenstra, MSW, who treated Plaintiff for 6 months in 2007. (*Id.* at 1065). Ms. Veenstra wrote that Plaintiff continued to exhibit symptoms of anxiety, depression, sleep disturbance, hypervigilance, flashbacks, difficulty concentrating, and avoidance. (*Id.*). She stated that these symptoms persisted in spite of therapy and medication. (*Id.*). Without mentioning Ms. Veenstra by name, the ALJ suggested that she disregarded this evidence because, as a social worker, Ms. Veenstra did not constitute an "acceptable medical source" under agency regulations. (*Id.* at 37). This decision is contrary to social security regulations and Tenth Circuit caselaw.

It is true that social workers do not constitute "acceptable medical sources" under the regulations and their testimony alone cannot establish the existence of a medically determinable impairment. SSR 06-03p.[5] However, once the ALJ has already determined that an impairment exists, the ALJ is required to consider the opinions of social workers and other practitioners since they provide important information regarding the severity of the impairment and its effect on the claimant's functionality. *Id.* (instructing ALJ's to "explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.") ; *see also Bowman v. Astrue*, 511 F.3d 1270, 1274-75 (10th Cir. 2008) (citing *Sloan v. Astrue*, 499 F.3d 838, 888 (8th Cir. 2007)); *Frantz v. Astrue*, 509 F.3d 1299, 1301-02

---

[5] Though social security rulings do not necessarily carry the force of law, they are entitled to deference. *See Fagan v. Astrue*, 231 F.App'x 835, 837 (10th Cir. 2007). Indeed, the particular strictures of SSR 96-8p have been explicitly endorsed by the Tenth Circuit in several unpublished opinions. *See Alexander v. Barnhart*, 74 F.App'x 23, 28 (10th Cir. 2003) (unpublished); *Southard v. Barnhart*, 72 F.App'x 781, 784 (10th Cir. 2003).

(10th Cir. 2007).

The ALJ's failure to consider Ms. Veenstra's opinion is in violation of social security regulations. This failure is more pronounced considering the fact that the ALJ relied on Nancy Claypool's GAF assessment even though Ms. Claypool is also a social worker and, much like Ms. Veenstra, does not constitute an acceptable medical source. This discrepancy tends to reinforce the impression that the ALJ selectively chose those medical records which supported a finding of non-disability in 2007 while ignoring those that did not. A remand is required.

## VI. Conclusion

For the reasons stated above, the Court **FINDS** that the ALJ erred in finding that Plaintiff engaged in substantial gainful activity in 2007 and that Plaintiff demonstrated medical improvement with regard to her depression in 2007.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum*, (Doc. 23), be **GRANTED**. This matter shall be remanded to the Commissioner of Social Security for a hearing consistent with this Memorandum Opinion and Order.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent